Brunson Instrument Company v. Commissioner.
Brunson Instrument Co. v. Commissioner
Docket No. 62663.
United States Tax Court
T.C. Memo 1957-154; 1957 Tax Ct. Memo LEXIS 110; 16 T.C.M. (CCH) 632; T.C.M. (RIA) 57154; July 31, 1957
*110 Petitioner acquired patents from a stockholder, who obtained the patents, under a tax-free exchange of its stock for the patents. Its cost basis for the patents was the same as the transferor's cost. For lack of substantiation of the alleged cost basis, respondent determined that petitioner's basis was zero. Upon the entire record, petitioner's cost basis of each patent is determined and deductions are allowed in the taxable years for depreciation. John A. Ross, Esq., for the petitioner. Claude R. Sanders, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax for the taxable years 1951, 1952, and 1953 in the amounts of $2,105.87, $13,876.87, and $10,816.04, respectively. The questions for decision are as follows: (1) What is petitioner's basis for six patents, if any? (2) What are the amounts of allowances for depreciation of the patents for each year? Respondent determined that petitioner's basis was zero in 1951, and no deductions for depreciation were allowed. Findings of Fact The petitioner, a Missouri corporation, was organized on March 29, 1946. Its principal place of business *111 is in Kansas City, Missouri. Petitioner filed its returns for the taxable years with the collector of internal revenue for the sixth district of Missouri. Petitioner was and is engaged in the business of manufacturing precision instruments used by surveyors and engineers. It is the successor to the business of a sole proprietorship which was operated by Amber N. Brunson (who is called Brunson hereinafter). The sole proprietorship did business under the same name as petitioner from 1924 until petitioner was organized. At all times material, Brunson was petitioner's president and owned a majority of its stock. Before petitioner was organized, Brunson owned four patents and had applications pending for two patents. On April 1, 1947, Brunson transferred these patents and the applications pending to petitioner in exchange for 7,500 shares of petitioner's stock having a par value of $10 per share, or a total par value of $75,000. Before and after the exchange, Brunson owned more than 80 per cent of petitioner's stock. The exchange of the patents for stock of petitioner was a tax-free exchange. The patents which are involved have a life of 17 years from the date of each patent. The *112 number of each patent and the dates of issuance and expiration are as follows: Patent
Date of
Expiration
Item
Number
Patent
Date
1
2164051
6-27-39
6-27-56
2
2208014
7-16-40
7-16-57
3
2280057
4-21-42
4-21-59
4
2329978
9-21-43
9-21-60
5
2525644
10-10-50
10-10-67
6
2531252
11-21-50
11-21-67
The invention covered by each patent was a device, or unit, which fitted into and was an integral part of an instrument such as an engineer's transit, an engineer's level, and a builder's level. All of the items patented were precision parts. Some were ball-bearing spindles for transits. Brunson made the devices in his own workshop. Each had to be tested and proved before a patent could be obtained. Brunson began work on the vertical, ball-bearing spindle covered by patent number 2164051 in 1927, and he worked several years on the developing, testing, and proving of each of the other items for which patents were obtained. In order to make each item for which application for a patent was filed, the entire instrument, of which the item was to be a part, had to be built. Various testing apparatus had to be made, also, such as a dust test cabinet *113 which was used to determine how long an instrument could be used in an atmosphere filled with dust. One instrument was given to Admiral Byrd to test at the South Pole. Another was given to the Kansas Highway Department to test. Brunson treated all of the items and the drawings, jigs, dies, models, patterns, and tools as his own personal property. The sole proprietorship, Brunson Instrument Company, did not carry these items, or the patents for them, as its assets, and they were not transferred to the petitioner in 1946 when the petitioner was organized. The sole proprietorship did not charge to its expenses on its books Brunson's expenses in developing, engineering, making, and testing any of the items for which the patents were obtained. In the early part of 1947, petitioner applied to the Reconstruction Finance Corporation (R.F.C.) for a loan of $100,000. In the negotiations for such loan, R.F.C. imposed as a condition precedent the transfer by Brunson of his patents and applications for patents to petitioner. Brunson complied with this condition. He transferred to petitioner the four patents which he had obtained and the two applications which were pending together with all *114 of his drawings, patterns, models, jigs, dies, tools, equipment, and fixtures relating to each item, all of which petitioner now has and uses. After making these transfers to petitioner, R.F.C. granted petitioner a loan of $90,000. At the time Brunson transferred the patents and applications for the patents and all of the related materials to petitioner, on April 1, 1947, he believed that the fair market value thereof, as well as his total cost, was at least $75,000. In its income tax returns for the subsequent years, petitioner computed its annual allowance for the depreciation of the patents and applications on the basis of a total cost basis to it of $75,000, or $12,500 for each patent. The Commissioner allowed the depreciation deductions for all of the taxable years prior to 1951. Francis Wright, a certified public accountant who carried on an accounting business under the name of Francis Wright & Company, rendered accounting services to the sole proprietorship and to Amber N. Brunson, until 1943, when another certified public accountant. Arthur L. Ross, succeeded to these duties. Ross also rendered accounting services to petitioner and he is still its accountant. The accounting *115 records of the sole proprietorship business and of Brunson were examined by Ross several years ago. Prior to the time of the trial of this case, those accounting records could not be located after diligent searches were made by Ross and Brunson. Francis Wright is deceased. Those accounting records have been lost. Brunson's expenses and costs of developing, engineering, constructing, making, and testing the six items covered by the six patents involved extended over 15 years in some instances, and over a lesser number of years in other instances. He was able to recall his costs for each patent to a large extent and made estimates of such costs based upon such recollections. He has been obliged to make estimates of his costs in the absence of the accounting records and other records. Brunson's costs of the six patents aggregated $60,000, as follows: Patent
Brunson's
Item
Number
Cost
1
2164051
$24,000
2
2208014
15,000
3
2280057
4,000
4
2329978
3,500
5
2525644
1,400
6
2531252
12,100
$60,000
Petitioner's basis for each of the six patents is the amount of the total cost of each which is set forth above. The depreciation allowed for *116 each year through the year 1950 for each of the patents, petitioner's cost basis for each one, and the remaining basis to be amortized over the remaining life of each patent, referring to each patent by item number rather than the number of each patent, are as follows: Peti-
Amortization
tioner's
Allowed
Balance to be
Item
Basis
Prior to 1951
Amortized
1
$24,000
$15,107.85
$ 8,892.15
2
15,000
10,196.07
4,803.93
3
4,000
5,245.07
(1,245.07)
4
3,500
4,887.22
(1,387.22)
5
1,400
127.06
1,272.94
6
12,100
118.02
11,981.98
$60,000
$35,681.29
$24,318.71
Prior to 1951, petitioner's computations of and deductions for the allowance for depreciation of the patents above-designated as items 3 and 4 exceeded its cost basis, as is found by this Court, supra, for each item. Petitioner has agreed to allocate such excessive depreciation of item 3 to item 1, and of item 4 to item 2. Taking into account such adjustments, to which respondent does not object now, under all of the circumstances, the balance of petitioner's unrecovered cost basis, as of January 1, 1951, for each patent, and the remaining life of each, are as follows: Remaining Cost
Basis To
Item
Be Amortized
Remaining Life
1
$ 7,647.08
5 years - 6 mos.
2
3,416.71
6 years - 5 mos.
3
None
None
4
None
None
5
1,272.94
16 years - 9 mos.
6
11,981.98
16 years - 10 mos.
$24,318.71
*117 The annual allowances for depreciation of the patents designated as items 1, 2, 5, and 6, above, for each of the taxable years 1951-1953, inclusive, for which petitioner is entitled to deductions, are as follows: Annual Amortization
Allowances Deductible
in 1951, 1952, 1953
1
$1,390.32
2
532.44
5
75.96
6
711.84
$2,710.56
The above figures are set forth in petitioner's exhibit 16. It contains other figures which it is not necessary to include here. The entire exhibit is incorporated herein by this reference. Petitioner deducted as the annual allowance for depreciation of the six patents $5,914.92 for 1951 and 1952, and $5,915.04 for 1953. Respondent disallowed the entire amount of the deduction for each year on the basis of his determination that the basis to petitioner of all of the patents was zero. He gave no other explanation for his determination. The deductions for the annual allowance for depreciation of the six patents were excessive to the extent of $3,204.36 for 1951 and 1952, and $3,204.48 for 1953. Opinion HARRON, Judge: The only question presented by the pleadings is whether in each of the taxable years petitioner had a *118 remaining undepreciated cost basis for each of six patents, and, if it did, the amount of such cost basis which is to be depreciated over the remaining life of each patent, i.e., during 17 years from the issuance to the expiration of each patent. Section 23(1), 1939 Code, provides for a "reasonable allowance" for depreciation. In the case of a patent, there may be depreciation allowances. Regulations 111, sec. 29.23(1)-7; Regulations 118, sec. 39.23(1)-7. It is agreed by the parties that petitioner acquired the patents in question on April 1, 1947 in a tax-free exchange within section 112(b)(5); that its basis for each patent is, under section 113(a)(8), the basis each would have had in the hands of Brunson, the transferor; and that the capital sum to be recovered through allowances for depreciation is, for each patent, Brunson's cost. A taxpayer must furnish, inter alia, full and complete information with respect to cost or other basis, the portion of cost or other basis which has been recovered through depreciation allowances for prior taxable years, and such other information as the Commissioner may require is substantiation of the deduction claimed. Regulations 111, sec. 29.23(1)-5; *119 Regulations 118, sec. 39.23(1)-5. Petitioner set up on its books $75,000 as its cost basis of all of the patents and applications for which patents were granted, and allocated one-sixth, or $12,500, to each. It did not set up on its books the actual cost of each patent. Such facts about costs presumably could have been given to petitioner by Brunson in 1947, but were not. Respondent's agents were not convinced by the accounting records of costs which were kept for Brunson by his account, such as were given to the agents, and, therefore, as we understand, determined that petitioner did not have any cost basis for any of the patents. When this case was tried, and for some time prior thereto. the records of Brunson's costs had become lost and one of his accountants, Francis Wright, had died. However, petitioner's present accountant testified that he had seen such accounting records and that they showed a total cost of the six patents in the amount of $86,328.70, which figure had been submitted to Peter Fox & Co., brokers, in the early part of 1947 in connection with negotiations with a Boston maker of precision instruments, Berger & Sons, who had discussed with Brunson a proposition *120 to purchase the patents and applications for patents in question. Petitioner relies in part upon such testimony. Brunson endeavored to reconstruct all the costs of engineering, designing, testing, and making each item for which a patent was obtained, i.e., the total cost of each patent. Without records of the costs, Brunson could do no more than attempt to reconstruct the costs. Petitioner relies upon such reconstruction of costs. They amounted to $66,018.50 for the six patents. Brunson's reconstruction of the costs of cach patent was submitted in schedules which set forth the various fees for obtaining a patent, costs of patterns, drawings, castings, materials, machining, labor, jigs, dies, fixtures, tools, and various other miscellaneous expenses. Consideration has been given to Brunson's reconstruction of costs. They are admittedly estimates based upon Brunson's recollections which extend backward over many years. However, Brunson is an inventor and manufacturer of precision instruments used by surveyors and engineers whose experience goes back to 1927. He impressed the Court as being an expert in his field, which is highly technical. He did the work which resulted in the *121 issuance of patents on the several devices, and we are satisfied that he knows substantially what his costs were. It is true that he relied too largely upon his earlier accountant, Wright, to maintain and preserve the correct accounting records, and, also, it was his duty to make certain that those records were provided to petitioner. But despite Brunson's negligence in these matters, petitioner should not be penalized by being deprived entirely of some cost basis for each patent and of some allowance for depreciation of patents which during the taxable years were being used in its business and were income producing. Brunson asserts that his reconstruction of costs is conservative. During a recess in the trial of this case, Brunson's figures were checked by his present accountant. It is concluded that they are entitled to receive considerable weight. Under all of the circumstances, it is our opinion that petitioner has not failed wholly in meeting its burden of proof, and that through Brunson petitioner has established in sufficient detail and with some degree of accuracy what the total cost of each patent was, and, therefore, its cost basis. Cf. Polish Army Veterans Post 147 v. Commissioner, 236 Fed. (2d) 509, *122 remanding 24 T.C. 891, for re-examination of the taxpayer's right to depreciation and to give it the opportunity to make the effort properly to "recast" its books to "develop accurate necessary detail of the depreciation." In this case petitioner made the effort properly to recast accounting records and to develop with some degree of accuracy the necessary details of the cost of each patent. However, the making of estimates, the lack of corroboration of the details, and the absence of accounting records are factors which must be taken into account in considering the entire record, and we therefore have made an approximation of the cost of each patent. Cohan v. Commissioner, 39 Fed. (2d) 540. Our Findings of Fact dispose of the issue. It is held that petitioner's cost basis of each patent, items 1 through 6, was $24,000, $15,000, $4,000, $3,500, $1,400, and $12,100, respectively. For years prior to 1951, petitioner deducted in its returns an annual allowance for depreciation of the patents based upon cost of $75,000. Its cost bases of the patents which we have designated, for convenience, as items 3 and 4 were fully depreciated prior to 1951, the first *123 taxable year before us, so that petitioner is not entitled to further depreciation allowances for them, according to our determination of the cost basis. Furthermore, petitioner has been allowed excessive depreciation deductions with respect thereto, according to our determination of the cost basis, in the total amount of $2,632.29. Petitioner is willing and proposes to allocate the excessive depreciation which it has received for these two patents to items 1 and 2, thereby reducing its undepreciated cost of those patents. It is our understanding that respondent, in the Rule 50 recomputation, will not object to petitioner's treatment. We are not obliged to pass upon the correctness of this method, and do not do so, because it amounts to a concession on the part of petitioner which appears to be the least advantageous to it, even though it is an arbitrary way of handling the matter. Petitioner's method of dealing with deductions allowed for depreciation of the patents in prior years, which was proposed during the trial, appears to satisfy the Commissioner's regulation which is to the effect that a taxpayer is not permitted under law to take advantage in later years of his errors in *124 prior years. Regulations 111, sec. 29.23(1)-5, p. 126. From our Findings of Fact and the above conclusions, it follows that for each of the years 1951-1953, inclusive, the total amount of the allowance for depreciation of patents for which deduction is allowable is $2,710.56, and that the deductions taken by petitioner were, in part, excessive. Respondent's determinations are reversed in part. Decision will be entered under Rule 50.